IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, § § § § | |
| Plaintiff, § § | |
| v. § | Civil Action No. 4:23-cv-01216-O |
| § | |
| CUETO CONSULTING & CONSTRUCTION, LLC, *et al.*, § § § § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion for Default Judgment (ECF No. 15) and supplement in support (ECF No. 18) filed by Plaintiff The Cincinnati Insurance Company ("CIC" or the "Surety"). By Order dated February 20, 2024, United States District Judge Reed O'Connor referred the Motion to the undersigned pursuant to 28 U.S.C. § 636(b)(1). ECF No. 16. The Court held a hearing on the matter on June 20, 2024. After considering the pleadings, applicable legal authorities, and arguments of CIC's counsel at the hearing, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** the Motion (ECF No. 15) and **ENTER default judgment** in favor of CIC as explained below.

**I.     BACKGROUND**

Cueto Consulting & Construction, LLC d/b/a C3, LLC ("C3") and Defendant C3-SMR, A Joint Venture, LLC ("C3-SMR") approached CIC to issue performance and payment bonds in connection with construction projects. ECF No. 15-1 at 1. CIC required indemnity before it issued a bond. *Id.* On April 19, 2022, Defendants C3-SMR, Andrew J. Cueto, and Alisa A. Ary-Cueto (collectively, "Defendants" or the "Indemnitors") executed an Agreement of Indemnity (the

"Agreement") in favor of CIC. *See* ECF No. 15-1 at 4-17. The Agreement provides that the Indemnitors:

> shall exonerate, indemnify and keep indemnified the Surety from and against any and all liability for losses and expenses of whatsoever kind or nature, including the fees and disbursements of counsel, and against any and all said losses and expense which the Surety may sustain or incur: (i) by reason of having executed or procured the execution of any Bond or Bonds; (ii) by reason of the failure of the [Indemnitors] to perform or comply with the covenants and conditions of this Agreement; or (iii) in enforcing any of the covenants and conditions of this Agreement.

*Id.* at 5.

CIC subsequently issued two Performance and Payment Bonds, one on behalf of C3 in favor of the United States of America with a penal sum of $71,856, and one on behalf of C3-SMR in favor of the United States of America with a penal sum of $505,841.47. ECF No. 15-1. at 2. Following the issuance of the bonds, contractors and suppliers of C3 and C3-SMR asserted claims against the bonds, alleging non-payment. *Id.* As a result of addressing these claims, CIC claims to have suffered $244,143.00 in damages. ECF No. 18 at 2.

On December 6, 2023, CIC sued Defendants and C3. ECF No. 1. On December 12, 2023, CIC filed its Amended Complaint and voluntarily dismissed C3 as a defendant, because C3 had declared bankruptcy. ECF Nos. 5, 14, 15. CIC made three failed attempts to serve Defendants. ECF No. 6-1 at 1-3, 6-9. The Court thereafter authorized CIC to effect substitute service on Defendants under Texas Rule of Civil Procedure 106(b) by attaching "a copy of the summons and complaint to the front entrance of the home of Andrew and Alisa Cueto at 900 Larkspur Lane, Fort Worth, TX 76112." ECF No. 8 at 2.

On January 11, 2024, CIC effected service on Defendants. ECF No. 9. They have not answered or otherwise appeared in this action. On February 2, 2024, at CIC's request, the Clerk made an Entry of Default against each of the Defendants (ECF Nos. 10, 11), and they still have

2

not attempted to defend themselves against the complaint. CIC now moves for default judgment against Defendants. ECF No. 15.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment. There are three stages to entry of default judgment. First, a default occurs "when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); Fed. R. Civ. P. 55(a). Second, the Clerk may enter a defendant's default if it is "established by affidavit or otherwise." *Brown*, 84 F.3d at 141 (citing Fed. R. Civ. P. 55(a)). Third, if the Clerk enters default and the plaintiff's claim is not "for a sum certain or a sum that can be made certain by computation," the plaintiff must apply for a default judgment from the Court. Fed. R. Civ. P. 55(b)(1)-(2). However, the Court may not enter default judgment against an individual in military service until an attorney is appointed to represent the defendant. 50 U.S.C. § 3931(b)(2).

"[A] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (internal quotation marks omitted). Rather, courts retain ultimate discretion to grant or deny default judgments. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Courts use a three-pronged analysis to determine if default judgment is appropriate. *J & J Sports Prods., Inc. v. Morelia Mex. Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015). First, courts ask if default judgment is procedurally warranted. *Id.* (citing *Lindsey*, 161 F.3d at 893). The *Lindsey* factors inform this first inquiry. *Id*. Under *Lindsey*, the Court may consider whether: (1) material issues of fact exist; (2) there has been substantial prejudice; (3) the grounds for default are clearly established; (4) the default was caused by a good faith mistake or excusable neglect;

3

(5) default judgment would be too harsh; and (6) the court would be obliged to set aside the default upon motion from the defendant. *Lindsey*, 161 F.3d at 893.

Second, courts analyze the substantive merits of the plaintiff's claims and ask if the pleadings establish a sufficient basis for default judgment. *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The pleadings are sufficient if they satisfy Federal Rule of Civil Procedure 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015); *see* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu*, 515 F.2d at 1206. But the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

"Third, courts determine what form of relief, if any, the plaintiff should receive." *Morelia*, 126 F. Supp. 3d at 813. In making this determination, the complaint's "well-pleaded factual allegations are taken as true, except regarding damages." *U.S. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987); *see also Jackson v. FIE Corp.*, 302 F.3d 515, 525 & n.29 (5th Cir. 2002) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2688 at 58-59 & n.5 (3d ed. 1998)). At this juncture, courts often find it helpful to conduct a Rule 55(b)(2) hearing. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) "The case law is clear that a judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *Id.*; *see also* Fed. R. Civ. P. 55(b)(2) (Courts may conduct a hearing on motions for default

judgment if needed to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.").

While the Fifth Circuit has "adopted a policy in favor of resolving cases on their merits and against the use of default judgments[,]" this policy is "counterbalanced by considerations of social goals, justice and expediency, a weighing process . . . largely within the domain of the trial judge's discretion." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (internal quotation marks and citation omitted) (quoting *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999)). But default judgment remains "a drastic remedy, not favored by the Federal Rules." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989); *see also Shipco*, 814 F.2d at 1014 ("[D]efault judgments are 'draconian' sanctions that the district court should impose only as a last resort.").

### III.   ANALYSIS

To determine whether entry of a default judgment is proper, the Court applies a three-pronged inquiry. *See Morelia*, 126 F. Supp. 3d at 813. Having conducted the three-part analysis, the undersigned concludes that (1) default judgment is procedurally warranted; (2) CIC's pleadings establish a sufficient basis for default judgment; and (3) CIC is entitled to $244,143.00 in actual damages, plus pre-judgment and post-judgment interest, costs of collection, and court costs.

#### A.   **Default judgment is procedurally warranted.**

CIC's claim survives the first of the three-pronged inquiry. Under *Lindsey*, courts consider six considerations. *See* 161 F.3d at 893. Here, each of the six supports default judgment.

First, no material issues of fact remain on CIC's claims. Its pleadings state particular facts to show (1) Defendants agreed to and are subject to Agreement; (2) CIC is the Surety of the Agreement; (3) Defendants are indemnitors under the Agreement; (4) the Agreement required the

Indemnitors to "indemnify and keep indemnified the Surety from and against any and all liabilities for losses and expenses of whatsoever kind or nature"; (5) Relying on the Agreement, CIC issued bonds, and subcontractors and suppliers asserted claims of non-payment against the bonds; and (6) CIC suffered damages resulting from those claims that the Indemnitors did not indemnify. *See* ECF Nos. 5, 5-1.

Second, nothing here shows that the "substantial prejudice" requirement undermines CIC's entitlement to default judgment. *See Lindsey*, 161 F.3d at 893. The third and fourth elements also support default judgment because the grounds of the Indemnitor's default are clearly established, and nothing suggests that their default was due to "a good faith mistake or excusable neglect." *See Lindsey*, 161 F.3d at 893. To date, the Indemnitors have failed to file any pleadings with the Court, despite having abundant opportunities to do so. Accordingly, the fifth factor supports default judgment, as a judgment by default is not too harsh when the defaulting party has had every opportunity to plead its cause but did not do so. *Id.* Finally, given the clear satisfaction of the above elements, nothing indicates that the Court would "be obliged to set aside the default" upon motion from the defendants. *See id.*; *see also Moreno v. LG Elecs.*, 800 F.3d 692, 698 (5th Cir. 2015) (noting district courts are not obliged to set aside a default upon defendant's motion where "the default was willful, the plaintiff will be prejudiced, or the defendant has no meritorious defense").

With each of the six *Lindsey* factors supporting default judgment, CIC's claims survive the step-one analysis. *See Morelia*, 126 F. Supp. 3d at 813. At step two, the Court must examine the substantive merits of CIC's claims and determine whether the pleadings establish a sufficient basis for default judgment on each. *See Nishimatsu*, 515 F.2d at 1206. The Court finds that they do.

6

**B.     CIC's pleadings establish a sufficient basis for default judgment.**

1.     <u>CIC stated a claim for breach of the Agreement.</u>

CIC seeks recovery of damages under its Breach of Indemnity Agreement claim. ECF No. 5 at 4-5. The Agreement provides that it is to be "governed by and construed in accordance with the laws of the state of Ohio, without giving effect to its conflict of laws principles." ECF No. 15-1 at 8. Federal courts sitting in diversity must "apply the choice-of-law rules of the forum state," which here is Texas. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, at 408 (5th Cir. 2012). But the Court "need not decide which state's laws apply unless those laws conflict." *Sonat Expl. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008). Rather, in the absence of a conflict, the Court "simply appl[ies] the law of the forum state." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) (collecting cases). "Texas courts presume that other states' laws are the same as its own[,]" and the party urging application of a different state's law "bears the burden of rebutting that presumption." *Playboy Enterprises, Inc. v. Sanchez-Campuzano*, 519 F. App'x 219, 225 (5th Cir. 2013) (citing *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 53 & n. 5 (Tex. 2008)). Because CIC does not raise the issue, the Court presumes that there is no conflict between Texas and Ohio laws at issue and "simply appl[ies]" Texas law. *Mumblow*, 401 F.3d at 620.

Texas law requires CIC to plead that:

(1) a contractual indemnity agreement existed between [CIC and the Indemnitors], (2) the agreement obligated [the Indemnitors] to indemnify [CIC] in the event claims were made on the bonds issued to [the Indemnitors], (3) claims were made on the bonds issued to [the Indemnitors], (4) all conditions precedent for recovery had occurred, been performed, waived, or excused, and (5) [CIC] has been damaged.

*Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995) (citing *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.)). Here, CIC's Amended Complaint contains a short and plain statement that pleaded each element. *See supra* at 1-2, 5-6.

        2.    <u>The Agreement secures liquidated damages, cost of collection, court costs, and pre-judgment and post-judgment interest.</u>

CIC seeks court costs, pre-judgment interest, post-judgment interest, and all costs of collection. ECF Nos. 5 at 5; 15-3 at 1; 18-2 at 1. The Agreement provides that upon an event of default, the Surety is entitled to payment for all "losses and expenses . . . including interest and attorneys' fees" incurred in its recovery efforts. ECF No. 5-1 at 3. CIC has satisfied its Rule 8 burden by pleading that the Agreement secures all of the relief it seeks. *See* ECF No. 5 at 4-5; 5-1 at 2-3. Accordingly, the Court finds that because CIC's pleadings establish a sufficient basis for default judgment, it has successfully satisfied the second prong.

    **C.**    **CIC is entitled to $244,143.00 in actual damages, plus pre-judgment and post-judgment interest, costs of collection, and court costs.**

Default judgment is appropriate against Defendants. But the Court's inquiry does not end there. Having concluded default judgment is proper, the Court must now "determine what form of relief, if any, the plaintiff should receive." *Morelia*, 126 F. Supp. 3d at 814. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Fed. R. Civ. P. 54(c). This is the only step in the inquiry where the Court does not assume the truth of the pleadings. *See Shipco*, 814 F.2d at 1014 ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). Generally, plaintiffs cannot summarily provide the Court with figures for damages or attorney's fees without explanation. Rather, they must "establish[] the necessary facts," either through detailed affidavits or an

evidentiary hearing, to make the amount "capable of mathematical calculation." *United Artists*, 605 F.2d at 857.

Here, CIC seeks $244,143.00 in actual damages, "court costs, and pre-judgment interest and post-judgment interest at a rate permitted by law." ECF Nos. 15 at 3; 18 at 2. In support, CIC provides a sworn declaration of Michael Fox, an Assistant Vice President and Bond Claim Manager for CIC. ECF No. 18-1. He testified that CIC "has suffered losses . . . of $244,143[.00] as of December 30, 2023." *Id.* at 2. CIC also attaches the internal ledger of CIC, "identifying the losses of December 30, 2023," which Mr. Fox incorporated by reference. ECF No. 18-1 at 2, 19-20. These losses include $46,000.000 for a claim by Allen Loggins & Sons, Inc., and $8,443.00 in expenses; $84,122.00 for a claim by Freedom Scaffold, LLC; $75,578.00 for a claim by Firetrol Protection Systems; and $30,000.00 for a claim by F.G. Haggerty Company, Inc. *Id.* At the June 20 hearing, counsel for CIC verified the accuracy of these damages.

In CIC's Amended Complaint, it seeks (1) judgment against Defendants in the amount of damages incurred by the Surety; (2) attorney's fees and expenses; (3) pre-judgment and post-judgment interest "at the maximum permissible [rate] at law or in equity"; and (4) costs of court. ECF No. 5 at 5. The court finds that the damages CIC requests in its Motion do not differ in kind from or exceed in amount, what it demanded in its Amended Complaint. The Court should therefore award $244,143.00 in actual damages, as well as all other relief that CIC seeks.

"[P]re-judgment interest is calculated under state law." *Bos. Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (citation omitted). In Texas, the common law governs pre-judgment interest on breach of contract claims. *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499-500 (5th Cir. 2002); *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex. 1998). "Texas common law allows pre[-

9

]judgment interest to accrue at the same rate as post-judgment interest on damages awarded for breach of contract." *Int'l Turbine Servs.*, 278 F.3d at 500 (citing *Kenneco Energy*, 962 S.W.2d at 532). When, as here, the parties' contract does not specify an interest rate, pre-judgment interest is "the prime rate as published by the Board of Governors of the Federal Reserve System" (available at https://www.federalreserve.gov/releases/H15/) "on the date of computation[,]" if the prime rate falls between five and fifteen percent a year. Tex. Fin. Code § 304.003(c). If the prime rate is above that range, then the interest rate is fifteen percent, and if it is below that range, then the interest rate is five percent. *Id.* Such interest begins to accrue on "the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed." Tex. Fin. Code § 304.104. The record reflects that CIC effected substitute service pursuant to the Court's Order (ECF No. 8) on January 11, 2024. ECF No. 9; *see also* ECF No. 15 at 2. The action was filed on December 6, 2023. ECF No. 5. Thus, pre-judgment interest will accrue from the date suit was filed until the date final judgment is entered.

The Court should award CIC post-judgment interest at the federal rate under 28 U.S.C. § 1961(a). *Colony*, 288 F.3d at 234 (citation omitted). Post-judgment interest compounds annually. *Craig v. GACP II, L.P.*, No. 3:19-cv-0058-G, 2022 WL 1778392, at *4 (N.D. Tex. June 1, 2022). Courts award post-judgment interest "on the entire amount of the final judgment, including damages, pre-judgment interest, and attorney's fees." *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991). Thus, Judge O'Connor should grant CIC's request for post-judgment interest at the applicable federal rate from the date of final judgment until it is paid in full.

### IV.   CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Plaintiff's Motion for Default Judgment (ECF No. 15), **ENTER DEFAULT JUDGMENT** in

favor of Plaintiff The Cincinnati Insurance Company against Defendants, and **AWARD** Plaintiff actual damages in the amount of **$244,143.00**, pre-judgment interested calculated at the applicable rate from December 6, 2023 until the date final judgment is entered, post-judgment interest calculated at the applicable federal rate from the date judgment is entered and compounded annually, all costs of collection, and costs of court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on June 25, 2024.

                                                                                           _____
                                                                                           Hal R. Ray, Jr.
                                                                                           UNITED STATES MAGISTRATE JUDGE